UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LEDESMA,<br><br>                    Plaintiff,<br><br>          v.<br><br>ADAME, et al.,<br><br>                    Defendants. | Case No. 1:13-cv-01227-AWI-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED BASED ON DISPUTES OF FACT, THAT DEFENDANTS' MOTION TO STRIKE BE DENIED AS MOOT, AND FINDING THAT PLAINTIFF EXHAUSTED HIS AVAILABLE ADMINISTRATIVE REMEDIES BASED ON EVIDENCE PRESENTED AT <u>ALBINO</u> HEARING<br><br>(ECF NOS. 30 & 51)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TEN DAYS |

## I.    BACKGROUND

Jose Ledesma ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed the complaint commencing this action on August 7, 2013.  (ECF No. 1).  This action now proceeds with Plaintiff's Third Amended Complaint, on Plaintiff's claims against defendants Adame, Tyree, and Lundy for violations of the Eighth Amendment based on conditions of confinement, against defendants Adame and Lundy for inadequate health care in violation of the Eighth Amendment, and against defendants Adame, Tyree, and Lundy for retaliation in violation of the First Amendment.  (ECF Nos. 23, 24, 25, & 28).[1]

---

[1] In his Third Amended Complaint, Plaintiff alleged that he was on contraband watch for 16 days.  While on contraband watch, he was unable to move unrestrained, and did not have access to a mattress, a blanket, a

1

On February 3, 2017, Defendants filed a motion for summary judgment on the ground that Plaintiff failed to exhaust his available administrative remedies before filing this action. (ECF No. 30). On April 10, 2017, Plaintiff filed an opposition to the motion. (ECF No. 35). In his declaration, Plaintiff stated that he filed a grievance (a 602 form) covering his claims in this case (which would have been timely filed), and also sent forms (California Department of Corrections and Rehabilitation ("CDCR") Form 22s) asking for updates regarding his 602, but that he never received a response. (Id. at 11-12). Plaintiff filed a copy of the 602 and Form 22s he allegedly submitted. (Id. at 22-23; 25-28). On April 19, 2017, Defendant filed a reply to the opposition. (ECF No. 37).

Because it appeared that Plaintiff's evidence created a dispute of fact regarding whether Plaintiff exhausted his available administrative remedies, the Court set an <u>Albino</u> evidentiary hearing. (ECF Nos. 36 & 41).

The Court conducted the evidentiary hearing on July 28, 2017. Defendants called the following witnesses: Jerry Wood, Kevin Cannon, and Gabriel Adame. Plaintiff called Carol Strickman as a witness, and testified on his own behalf. After hearing the evidence, the Court decided to allow each party to submit a supplemental brief. (ECF No. 44). Defendants filed their supplemental brief on August 11, 2017. (ECF No. 49). Plaintiff filed his supplemental brief on August 17, 2017. (ECF No. 50). On August 24, 2017, Defendants filed a motion to strike the exhibits attached to Plaintiff's supplemental brief. (ECF No. 51).

After consideration of all the evidence presented, as well as the supplemental briefs and the applicable law, the Court makes the following findings and recommendations.

## II.    LEGAL STANDARDS

### A.    <u>Exhaustion</u>

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

---

shower, or other basic necessities. Plaintiff also alleged that, during this ordeal, he was denied medical care despite repeated requests for treatment. Plaintiff alleged that he was put through the ordeal in retaliation for filing grievances and a staff complaint.

other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." Booth v. Churner, 532 U.S. 731, 736, 741 (2001); Ross v. Blake, 136 S.Ct. 1850, 1857, 1859 (June 6, 2016). The exhaustion requirement applies to all prisoner suits relating to prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002). An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

As the United States Supreme Court explained in Ross:

> [T]hat language is "mandatory": An inmate "shall" bring "no action" (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies…. [T]hat edict contains one significant qualifier: the remedies must indeed be "available" to the prisoner. But aside from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any "special circumstances."

Ross, 136 S.Ct. at 1856 (internal citations omitted). Also as discussed in Ross, there are no "special circumstances" exceptions to this requirement. Id. at 1862. The one significant qualifier is that "the remedies must indeed be 'available' to the prisoner." Id. at 1856. The Ross Court described this qualification as follows:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. See 532 U.S., at 736, 738, 121 S.Ct. 1819. Suppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions. The procedure is not then "capable of use" for the pertinent purpose. In Booth's words: "[S]ome redress for a wrong is presupposed by the statute's requirement" of an "available" remedy; "where the relevant administrative procedure lacks authority to provide any

3

relief," the inmate has "nothing to exhaust." *Id.,* at 736, and n. 4, 121 S.Ct. 1819. So too if administrative officials have apparent authority, but decline ever to exercise it. Once again: "[T]he modifier 'available' requires the possibility of some relief." *Id.,* at 738, 121 S.Ct. 1819. When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy.

Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it. As the Solicitor General put the point: When rules are "so confusing that ... no reasonable prisoner can use them," then "they're no longer available." Tr. of Oral Arg. 23. That is a significantly higher bar than CRIPA established or the Fourth Circuit suggested: The procedures need not be sufficiently "plain" as to preclude any reasonable mistake or debate with respect to their meaning. See § 7(a), 94 Stat. 352; 787 F.3d, at 698–699; *supra,* at 1855, 1857 – 1859. When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion. But when a remedy is, in Judge Carnes's phrasing, essentially "unknowable"—so that no ordinary prisoner can make sense of what it demands—then it is also unavailable. See *Goebert v. Lee County,* 510 F.3d 1312, 1323 (C.A.11 2007); *Turner v. Burnside,* 541 F.3d 1077, 1084 (C.A.11 2008) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available"). Accordingly, exhaustion is not required.

And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. In *Woodford,* we recognized that officials might devise procedural systems (including the blind alleys and quagmires just discussed) in order to "trip[ ] up all but the most skillful prisoners." 548 U.S., at 102, 126 S.Ct. 2378. And appellate courts have addressed a variety of instances in which officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures. As all those courts have recognized, such interference with an inmate's pursuit of relief renders the administrative process unavailable. And then, once again, § 1997e(a) poses no bar.

<u>Id.</u> at 1859–60.

Additionally, "[w]hen prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies." Andres v. Marshall, No. 15-56057, 2017 WL 3432609, at *2 (9th Cir. 2017).

The failure to exhaust in compliance with section 1997e(a) of the PLRA is an affirmative defense that defendants have the burden of raising and proving. Jones, 549 U.S. at 216; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).

The Ninth Circuit has provided guidance regarding the proper procedural device for raising the affirmative defense of exhaustion under section 1997e(a). Albino v. Baca ("Albino II"), 747 F.3d 1162, 1168–69 (9th Cir. 2014) (en banc). Following the decision in Albino II, defendants may raise non-exhaustion as an affirmative defense under section 1997e(a) in either a motion to dismiss pursuant to Rule 12(b)(6) or a motion for summary judgment under Rule 56. Id. If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by section 1997e(a). Jones, 549 U.S. at 223–24; Lira v. Herrera, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

**B.** **Summary Judgment**

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino II, 747 F.3d at 1169 ("If there is a genuine dispute about material facts, summary judgment will not be granted"). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010). In judging the evidence at the

summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). The Court must liberally construe Plaintiff's filings because he is a *pro se* prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In a summary judgment motion for failure to exhaust, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino II, 747 F.3d at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. However, "the ultimate burden of proof remains with the defendant." Id. "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id. at 1166.

If, as to the issue of exhaustion, "summary judgment is not appropriate, the district judge may decide disputed questions of fact in a preliminary proceeding." Albino II, at 1168. When feasible, such questions of fact should be decided before addressing the merits of the claim. Id. at 1170. "If the district judge holds that the prisoner has exhausted available administrative remedies, [or] that administrative remedies are not available…, the case may proceed to the merits." Id. at 1171.

Furthermore, while parties may be expected to simply reiterate their positions as stated in their briefs, one of the purposes of an evidentiary hearing is to "enable [ ] the finder of fact to see the witness's physical reactions to questions, to assess the witness's demeanor, and to hear the tone of the witness's voice….'" United States v. Mejia, 69 F.3d 309, 315 (9th Cir. 1995). All of this assists the finder of fact in evaluating the witness' credibility. Id. It is only in "rare instances" that "credibility may be determined without an evidentiary hearing…." Earp v. Ornoski, 431 F.3d 1158, 1169–70 (9th Cir. 2005).

///

///

1  III.    **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

2          A.      Parties' Positions as Presented in Motion for Summary Judgment Papers

3                  In their motion for summary judgment, Defendants argue that Plaintiff failed to exhaust

4  his administrative remedies concerning his allegations in this case.  Plaintiff's complaint stems

5  from an incident that allegedly occurred at California Correctional Institution in Tehachapi

6  ("CCI") on October 26, 2011, through November 11, 2011.  Defendants allege that they

7  reviewed Plaintiff's appeal history, and that Plaintiff did not submit any 602s related to the

8  incident. (ECF No. 30, p. 5-6).  Plaintiff did submit a 602 on December 7, 2011, but it related

9  to the loss of a gold-colored chain and religious medallion, not to the allegations in the

10 complaint. (Id. at 9-10).

11                 Plaintiff claims, in contrast, that he filed a 602, and that he followed-up on the

12 processing of the 602 by filing Form 22s referring to his earlier grievance, but never received a

13 response.  (ECF No. 35, pgs. 11-12).

14         B.      Recommendation Regarding Summary Judgment

15                 The parties' positions in the summary judgment motion largely turn on a factual

16 dispute.  Defendants claim (and submitted evidence) that Plaintiff never filed a 602 related to

17 the incidents alleged in the complaint, whereas Plaintiff claims (and submitted evidence) that

18 he did file a 602 but that it was never processed.

19                 Because Defendants' motion for summary judgment cannot be determined based on

20 undisputed facts, the Court recommends that it be denied so that the defense of exhaustion of

21 administrative remedies may be decided with the benefit of the evidence presented at the

22 Albino hearing.

23 IV.    **FINDINGS OF FACTS AND CONCLUSIONS OF LAW BASED ON**

24         **EVIDENTIARY HEARING ON EXHAUSTION**

25         A.      Law and Evidence Relating to the Availability of Administrative Remedies

26                 The State of California provides its prisoners and parolees the right to appeal

27 administratively "any departmental decision, action, condition, or policy which they can

28 demonstrate as having an adverse effect upon their welfare."  Cal. Code Regs. tit. 15 §

3084.1(a).  The process is initiated by submitting a 602.  <u>Id.</u> at § 3084.2(a).

Defense witness Jerry Wood, the appeals coordinator at California Correctional Institution in Tehachapi, testified that "There's three ways that a inmate can file an appeal.  He can mail it U.S. Mail; he can hand it to the staff, and you'd normally have a 22 with it as a receipt that it's been turned into a staff; and there's a locked appeal box in the housing units and on the yards."  Transcript of Proceedings before Magistrate Judge Erica P. Grosjean, July 28, 2017 ("Tr."), at 15:17-21.  "When an appeal comes in we date stamp it that day, and then when it gets processed we have to process it generally within five days, and at that point it's given a log number and it generates -- we either screen it back to the inmate telling him how to correct the issue or separate his issues, give him points how to process the appeal and if it's assigned it's generated a notice and it's assigned."  <u>Id.</u> at 14:8-14.  An inmate has "[t]hirty days after the date of [the] incident" to file his or her grievance.  <u>Id.</u> at 15:12-14.  If an inmate wants proof that he or she submitted a grievance on a certain day, that inmate can "have an officer sign a [Form] 22 saying hey, on this day I'm submitting an appeal."  <u>Id.</u> at 19:13-20.  However, getting a receipt in the form of a Form 22 is not mandatory.  <u>Id.</u> at 44:4-6.

Mr. Wood also testified that Plaintiff's grievance would have been treated differently than a usual 602 because "CDCR takes staff complaints very seriously and allegations such as this. So immediately this would have received a date stamp showing that we received it.  That's where it says staff use on the other side, it would've been date stamped.  On the top it would've been given a log number, just like all appeals.  We do that to all of them.  But at that point then this is referred to the hiring authority for review and they -- on these they make the determination what they're going to do as far as processing; who it's going to be assigned to. They're going to do an inquiry on it and further investigation on this."  <u>Id.</u> at 31:3-18.

Additionally, Mr. Wood testified about the procedure when the appeals office receives Form 22s inquiring about the status of an appeal.  "On a 22 form, we sign them, tell them where their appeal is at the time because we tell them it's due in 30 days and they'll write in 10 days is it completed yet.  And we just advise them no, log number, whatever the appeal isn't due back until then, you know, whatever the due date is."  <u>Id.</u> at 33:12-16.  If a copy of the 602

8

is attached to the Form 22, the 602 would likely be processed.  Id. at 53:16-54:13.

When asked what happens if an inmate inquiries about an appeal that has been lost (or that the appeals office has no record of), Mr. Wood testified that, "Normally if we get one and we haven't -- and they're claiming they turned one in we just identify the last appeal that they submitted, the last appeal that you submitted is log number this, about whatever the issue is; a mail issue or that, and advise them that we haven't received it."  Id. at 33:17-25.  Mr. Wood also testified that, during the relevant time period, the appeals office's responses to form 22 requests were "purged" "within three years."  Id. at 34:1-5.[2]

## B.    Plaintiff's Evidence Regarding Exhaustion of Available Administrative Remedies

As evidence, Plaintiff submitted a copy of the 602 form he allegedly filed, which was admitted into evidence as Defendants' Exhibit 1.  Id. at 30:3-22; 93:15-94:15.  He also submitted four Form 22s that were on goldenrod paper, which were admitted into evidence as Plaintiff's Exhibit A.  Id. at 49:10-23; 52:12-24.  Additionally, he called two witnesses: himself and Carol Strickman.

### i.    Plaintiff's Testimony

Plaintiff testified that when he arrived at CCI on October 28, 2011, defendant Adame made numerous remarks in regards to Plaintiff filing 602s, including telling Plaintiff that he "should not waste [his] time there because 602s were used as toilet tissue."  Id. 88:15-18; 90:12-16.

Plaintiff was then placed on contraband watch.  Id. at 90:20-23.  Plaintiff was released from contraband watch on November 10, 2011.  Id. at 91:10-13.  After Plaintiff was released from contraband watch and was able to comprehend what occurred, and after receiving suggestions from inmates more knowledge than himself, Plaintiff documented what happened in a 602.  Id. at 95:17-96:2.  The 602 was filed on November 17, 2011.  Id. at 91:19-21.[3]

Before sending the 602 to the appeals office, Plaintiff placed the 602 in a U-Save 'Em

---

[2] Thus, the CDCR does not have any records related to Plaintiff's Form 22s from the relevant period.
[3] A copy of the 602 was marked as Defendants' Exhibit 1.  (Tr. at 93:15-94:15; 96:3-7)

9

envelope and sent it to the law library so that two copies could be made.  Id. at 96:5-97:8; 117:8-12.

      After Plaintiff received the copies and his original 602, he filed his 602 by "placing it once again in a U-Save 'Em envelope and writing to appeals coordinator on the U-Save 'Em envelope and mailing it out.  Usually mail pickup would be either from 2:00 to 10:00, which is the last walk of -- or the first actual walk of first watch."  Id. at 97:6-14.  The envelope was picked up by a correctional office, but Plaintiff could not recall the correctional officer's name.  Id. at 97:15-21.  Plaintiff did not get a Form 22 as a receipt because "the 602 was the only thing available to me at the moment and I wanted to file it… so I wouldn't exceed the 30-day limitation."  Id. at 98:13-99:9.

      Plaintiff testified that he wrote his 602 at about 9:00 or 10:00 in the morning, had the copies made, received the copies back, and filed the grievance all on the same day.  Id. at 116:10-117:19.

      Because Plaintiff did not receive a response to the 602, on December 11, 2011, he filled out a Form 22 that stated, "I, appellant, filed a 602 on 11/17/11 in regard to being placed on potty watch for 16 days and is requesting adverse action be taken against IGI for arbitrarily keeping me on for 16 days potty watch violation my constitutional -- violating my constitutional rights.  See attached. Please inform me of status. Thank you for your time."  Id. at 103:5-7; 101:21-102:2.  Plaintiff testified that the attachment was a copy of his 602.  Id. at 102:3-4.  The Form 22 was signed by CO H. Adams, and Adams "took it upon himself to take it where it needed to be – go to."  Id. at 102:10-12; 103:16-22.[4]

      Plaintiff never received a response, so on February 5, 2012, he filled out another Form 22.  Id. at 103:24-104:5; 105:20-21.  It stated, "This is my second request form I forward to you inquiring the status of my 602 appeal filed on 11/17/11 requesting adverse action be taken against IGI for arbitrarily keeping me on potty watch for 16 days violating my constitutional rights.  See attached.  Please let me know what's going on.  Thank you for your time."  Id. at

---

[4] Plaintiff had the original Form 22 goldenrod copy at the hearing.

104:14-22. Plaintiff testified that he attached a copy of his 602. Id. at 104:23-25. This Form 22 was also signed by CO H. Adams. Id. at 105: 17-19. Adams took the Form 22 into his possession. Id. at 105:21-24.[5]

Plaintiff still never received a response, so on January 28, 2013, Plaintiff filed another Form 22. Id. at 106:19-22; 107:11. It stated, "I have patiently been awaiting an answer on my 602 11/17/11 requesting adverse action against IGI for arbitrarily keeping me on potty watch for 16 days in violation of my constitutional rights. See attached. Please let me know the status. Thank you for your time." Id. at 107:1-8. This Form 22 was signed by W. Trot. Id. at 107:9-10. Plaintiff was not sure, but believed that Trot circled the box "forwarding to another staff…." Id. at 107:11-13.[6]

As Plaintiff still had not received a response, on February 27, 2013, Plaintiff filled out another Form 22. Id. at 107:15-21; 108:13-14. It stated, "I am not sure what is the procedure on looking into matters of violation -- violating an inmate's constitutional rights, but I have sent request forms for the past year or so to find out what is going on with my 602 appeal filed 11/17/11. See attached. Requesting adverse action be taken against IGI for arbitrarily keeping me on potty watch for 16 days violating my constitutional rights. See attached. Will await your response promptly. Thank you for your time." Id. at 107:22-108:7. Plaintiff testified that he attached a copy of his 602. Id. at 108:8-10. This Form 22 was signed by Montoya. Id. at 108:13-14. Montoya wrote on the Form that he mailed it (via U.S. Mail) to the appeals coordinator on February 28, 2013. Id. at 108:15-18.[7]

Plaintiff never received a response from the appeals coordinator for the 602 or any of the Form 22s. Id. at 106:13-18. Plaintiff did not file a 602 regarding the delay in processing or the lost grievance. Id. at 122:9-12.

///

---

[5] Plaintiff had the original Form 22 goldenrod copy at the hearing.
[6] Plaintiff had the original Form 22 goldenrod copy at the hearing.
[7] Plaintiff had the original Form 22 goldenrod copy at the hearing. The Court notes that the signatures of the correctional officers on the Form 22s appear different from each other, and that they appear unlike Plaintiff's own handwriting.

After reviewing his trust account statement,[8] Plaintiff confirmed that no copy charges were made in November of 2011.  Id. at 124:2-8.  Plaintiff did not know why he was not charged for making copies of his 602.  Id. at 124:2-23.  Sometimes Plaintiff was charged when he made copies, but sometimes he was not.  Id. at 123:16-124:1.

ii.    *Carol Strickman's Testimony*

Ms. Strickman is a senior staff attorney at Legal Services for Prisoners with Children.  Id. at 63:9-12.  She read from two sources that both state that sometimes filed 602s get lost.  Id. at 66:2-7; 71:10-16.  She testified that, in her experience, she thinks that it is not uncommon for prisoners to submit a 602 and to have it somehow get lost.  Id. at 71:25-72:6.  She also testified about a specific example of an inmate at CCI whose filed 602 was lost.  Id. at 72:7-17; 85:21-86:4.

## C.    Defendants' Evidence Regarding Exhaustion of Available Administrative Remedies

As evidence, Defendants submitted Plaintiff's inmate trust account statement, which was admitted into evidence Defendants' Exhibit 2.  Id. at 111:10-112:5.  Defendants also called three witnesses: Jerry Wood, Kevin Cannon, and Gabriel Adame.

i.    *Jerry Wood's Testimony*

Mr. Wood testified that he did a search for responses to Plaintiff's Form 22s, but that any responses were purged.  Tr. at 34:6-15.

Mr. Wood also testified that, had Plaintiff's 602 been received by the appeals office, even if it was received late, it still would have been processed through an inquiry to see if there was any validity to Plaintiff's allegations.  Id. at 37:9-38:19.

Mr. Wood also testified that he reviewed Plaintiff's appeals history, and that the records show that Plaintiff did not file a 602 related to the incidents alleged in the complaint.  Id. at 12:24-13:11.

On cross-examination, Mr. Wood testified that 602s have gone missing in the past.  Id. at 42:8-14.

---

[8] On cross-examination, defense counsel admitted a copy of Plaintiff's trust account statement as Defendants' Exhibit 2.  Id. at 111:10-112:5.

## ii. Kevin Cannon's Testimony

Mr. Cannon testified that he is employed by the CDCR as a correctional officer at California Correctional Institution in Tehachapi. Id. at 135:20-23. He has been a correctional officer since 1993. Id. at 135:22-23. He was the legal librarian in Facility 4-A from 2004 or 2005 until 2015. Id. at 135:25-136:6. He "basically ran the law library." Id. at 136:7-8. During the period Mr. Cannon worked at the law library, there was one other law librarian. Id. at 146:10-16.

In order to make copies, inmates need a law library form and a trust withdrawal. Id. at 138:21-24. Based on CDCR policy, 602s that have not yet received a decision from the third level of review are considered "non-legal copies," and will not be copied unless the inmate pays for the copies. Id. at 139:7-17; 145:24-146:3. Each copy is ten cents. Id. at 139:18-20. If an inmate were charged for making a copy, that charge would be noted on the inmate's trust account. Id. at 139:21-24. Inmates are always charged for copies, and Mr. Cannon never provided free copies. Id. at 139:25-140:16. Providing free copies would violate policy. Id. at 140:17-19. If an inmate sent a request for copies to the law library, it would take approximately twenty-four hours to provide the copies to the inmate. Id. at 149:23-150:9.

After reviewing Plaintiff's trust account statement, Mr. Cannon testified that there were no copy charges on Plaintiff's account on or around November 17, 2011. Id. 141:19-25.

## iii. Gabriel Adame's Testimony

Defendant Adame testified that he is currently employed by the CDCR as an Assistant Institutional Gang Investigator, and was employed as an Assistant Institutional Gang Investigator in 2011. Id. at 152:14-23. His job is to monitor and document gang activity, and to conduct investigations. Id. at 152:24-153:2. He was did not pick up mail. Id. at 159:13-16.

He never told Plaintiff that 602s were used as toilet paper, or that filing 602s would be a waste of time. Id. at 154:6-10; 155:8-13.

He was assigned to monitor the Mexican Mafia Prison Gang, and would monitor the mail of "the gang leaders, influentials on the facility." Id. at 156:1-15. When monitoring mail, he would go to the mail department, and, before the mail was sent to its destination, would look

at the mail of the people he was watching.  Id. at 160:22-163:17.

However, he did not monitor mail from inmates that was addressed to the appeals coordinator.  Id. at 158:15-17.  He only monitored outgoing mail and incoming mail.  Id. at 158:18-22.  Institution to institution mail was put in separate cubbies in the mail room.  Id. at 164:3-6.  He had physical access to that mail, but did not monitor it.  Id. at 165:8-13.

### D.  **Supplemental Briefing and Motion to Strike**

Defendants argue that the evidence presented at the evidentiary hearing shows that Plaintiff had an available administrative remedy, and that Plaintiff failed to show that the administrative remedies were effectively unavailable to him.  (ECF No. 49).  Defendants' brief relies heavily on the fact that Plaintiff did not have a "receipt" for the alleged filing of his grievance.  (Id. at 4-5).

Plaintiff argues that he did comply with prison grievance procedures.  (ECF No. 50). Plaintiff also lists five inmates that could offer testimony regarding "their own experiences with CDCR personnel thwarting the 602 process by mishandling appeals or intimidating prisoners." (Id. at 6).[9]  Plaintiff also attaches approximately twenty-four pages of exhibits.

As to Defendants' request that the Court strike the testimony offered by Ms. Strickman (ECF No. 49, p. 6), that request will be denied.  The Court allowed Ms. Strickman to testify at the evidentiary hearing over Defendants' objections, and the Court sees no reason to change that ruling.  Additionally, as discussed below, Ms. Strickman's testimony is not dispositive to the Court's finding that Plaintiff exhausted his available administrative remedies.

As to Defendants' motion to strike the exhibits attached to Plaintiff's supplemental brief (ECF No. 51), the Court will recommend denying it.  As analyzed below, based on the evidence presented at the evidentiary hearing, the Court finds that Plaintiff exhausted his available administrative remedies.  Accordingly, the Court has not considered Plaintiff's

---

[9] As the Court finds that the evidence presented already shows that Plaintiff did exhaust his available administrative remedies, the Court is not reaching the issue of whether Plaintiff should have been allowed to call these witnesses or any other witnesses (at the evidentiary hearing, Plaintiff stated that he has numerous witnesses he wanted to call, but they were unable to attend the hearing because they were in custody (Tr. at 89:9-11)). However, the Court notes that it does not appear that any of these witnesses has personal knowledge regarding Plaintiff's attempts to utilize the grievance process.

additional evidence, and the motion to strike should be denied as moot.

**E.** **Analysis of Evidence**

The Court has evaluated the evidence presented. The Court finds that the CDCR does have a generally available grievance procedure. While there was little to no testimony regarding the three levels of appeals, the relevant level here is the first level, and Defendants put on testimony regarding the availability of the first level. Mr. Wood credibly testified regarding the available procedures for submitting a grievance to the first level.

There is also no evidence that the appeals office received a 602 related to the incidents described in the complaint. Mr. Wood gave credible testimony that Plaintiff's appeals history shows that the appeals office never received a 602 related to the incidents alleged in the complaint. Moreover, Plaintiff testified that he never received a response from the appeals office. Mr. Wood credibly testified that the appeals office would have sent Plaintiff a response to the 602, had the appeals office received it.

Accordingly, "the burden shifts to [] [Plaintiff] to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino II, 747 F.3d at 1172. Ultimately, Defendants and Plaintiff's version of events are irreconcilable and truly presents a dispute of fact. Defendants contend that Plaintiff failed to submit any grievances related to the incident, whereas Plaintiff testified (and presented evidence) that he did submit a grievance, but that it was never processed.

In terms of demeanor, the Court did not observe any clear indications that any witness was testifying untruthfully. Accordingly, the Court cannot rest its decision on any clear observations of false testimony.

Ultimately, however, the Court finds that the evidence is more supportive of Plaintiff's version of events. The most material and probative evidence came in the form of a copy of the 602 Plaintiff alleges he submitted (Defendants' Exhibit 1), as well as four original goldenrod CDCR Form 22s inquiring about the 602 (Plaintiff's Exhibit A). If these documents are genuine, they indicate that Plaintiff timely filed a grievance concerning his claims in this case.

15

The 602 clearly relates to the incident alleged in the complaint. The complaint describes how Plaintiff was kept on contraband watch for sixteen days, and includes allegations that Plaintiff was put on contraband watch in retaliation for filing grievances and a staff complaint. (ECF No. 23). It is dated within the applicable period for filing a grievance. In the 602, Plaintiff states that he was kept on "potty watch" for sixteen days, and briefly describes the alleged ordeal, including his "pleas" for medical treatment, which was never given. Plaintiff also alleges that he was harassed for filings grievances and a staff complaint.

Plaintiff contends that he correctly filed the 602, but that it was never processed. It appears to be undisputed that if the 602 was filed as indicated, it would satisfy the first step of the grievance procedure. However, to the extent that it is disputed, the Court finds that had Plaintiff filed his 602 as indicated, it would have satisfied the first step of the grievance procedure.[10]

To corroborate his version of events, Plaintiff provided, on goldenrod paper, four Form 22s that he allegedly sent to the appeals coordinator to follow up on the processing of his 602. On each Form 22, Plaintiff inquired about the status of his 602. Each Form 22 bears the signature of a correctional officer that Plaintiff allegedly gave the form to. The signatures appear to be in different handwriting than Plaintiff's. Form 22 is the correct form to send to the appeals coordinator to inquire about missing or lost 602s. Plaintiff testified credibly that he sent these forms to the appeals coordinator when he did not get a response to his 602, and that he attached a copy of the 602 to each Form 22 he sent to the appeals coordinator. Plaintiff testified credibly that he never received a response to any of the Form 22s.

---

[10] The 602 does not mention all defendants by name. However, it does not appear that Defendants argued that, if the grievance was legitimate, that Plaintiff failed to exhaust as to the unnamed defendants. Moreover, "[u]nder the PLRA, a grievance 'suffices if it alerts the prison to the nature of the wrong for which redress is sought.' *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir.2010) (quoting *Griffin*, 557 F.3d at 1120). The grievance 'need not include legal terminology or legal theories,' because '[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.' Griffin, 557 F.3d at 1120. The grievance process is only required to 'alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.' *Jones*, 549 U.S. at 219, 127 S.Ct. 910 (citations omitted)." Reyes v. Smith, 810 F.3d 654, 659 (9th Cir. 2016). The Court finds that, under this standard, the 602, if correctly filed and pursued through the final level of review, would have exhausted Plaintiff's administrative remedies as to all defendants.

To counter Plaintiff's version of events, Defendants point to the fact that Plaintiff's trust account does not show copy charges from the date when Plaintiff allegedly made copies of his 602 before he submitted it to the appeals coordinator. Mr. Cannon testified that prisoners are always charged for making copies of a 602 that has not yet received a decision from the third level of review. Plaintiff contends that this rule was not always followed and that at times the law library did make free copies for him.

Defendants also submitted evidence that it generally takes twenty-four hours to get copies made via the method Plaintiff used, whereas Plaintiff testified that he wrote his 602, received copies, and sent it to the appeals office all on the same day.

The Court has reviewed the evidence, as well as the demeanor of all witnesses. The Court understands the import of the fact that Plaintiff's trust account statement does not show copy charges on or around the relevant date, and this casts doubt on Plaintiff's version of events. As does the fact that Plaintiff supposedly wrote his 602, got copies, and sent it to the appeals office on the same day when the copying procedure generally takes twenty-four hours. In the end, however, the Court believes that the preponderance of the evidence favors Plaintiff.

Plaintiff testified with a credible demeanor. He had a copy of the 602 he allegedly filed, as well as the originals of four Form 22s that he submitted inquiring about the 602. There is no direct evidence that any of these documents are forged, and they are internally consistent. Additionally, the four Form 22s have signatures from three different officers, and those signatures do not appear to match Plaintiff's.

Moreover, Plaintiff has a documented history of filing 602s properly. Given the allegations in the complaint, it seems credible to say that he would have properly filed a 602 regarding the incident alleged in the complaint as well.

Finally, and while not dispositive, the Court notes that both parties put on evidence that 602s are sometimes lost. Additionally, based on defendant Adame's testimony, defendant

///

///

///

Adame had an opportunity to intercept Plaintiff's outgoing mail.[11]

Thus, given the burden of proof and the applicable law, the Court recommends finding that Plaintiff has satisfied his exhaustion requirement.

## VII. CONCLUSION AND RECOMMENDATIONS

For foregoing reasons, the Court finds that there is a genuine dispute of material fact regarding whether Plaintiff exhausted his administrative remedies, that Defendants met their initial burden of showing that CCI generally has an available administrative remedy, and that the generally available administrative remedy was not available to Plaintiff because prison officials improperly failed to process Plaintiff's 602.

Accordingly, based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.      Defendants' motion to strike be DENIED as moot;

2.      Defendant's motion for summary judgment on the issue of failure to exhaust (ECF No. 30) be DENIED; and

3.      Plaintiff be deemed to have satisfied the exhaustion requirement.

///
///
///
///
///
///
///
///
///
///
///

_____

[11] The Court is not finding that defendant Adame in fact intercepted Plaintiff's 602 form. However, the Court notes that the grievance was against defendant Adame, and that defendant Adame had an opportunity to intercept and destroy it.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within ten (10) days** after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  __September 15, 2017__          _____/s/ Erica P. Grosjean_____
                                        UNITED STATES MAGISTRATE JUDGE